NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil No. 05-5310 (AET) |
| MERCHANTS MUTUAL INSURANCE COMPANY, | **OPINION & ORDER** |
| Defendant. | |

THOMPSON, U.S.D.J.

I. Introduction

This matter comes before the Court on Plaintiff United State's Motion for Partial Summary Judgment seeking a declaration that Defendant Merchants Mutual Insurance Company ("Merchants" or "Defendant") is obligated to defend and indemnify the United States in its litigation with Elizabeth Evans, and Defendant's Cross Motion for Summary Judgment. The Court considered the submissions of both parties, without oral argument pursuant to Fed. R. Civ. P. 78. For the following reasons, Plaintiff's motion is granted, and Defendant's motion is denied.

II. Background

This suit stems from a dispute over insurance coverage. On January 10, 2005, Ms. Evans sued Melville Hall, a non-appropriated fund instrumentality[1] ("NAFI") of the United States for

---

[1] "Non-appropriated fund instrumentalities" are generally officers' mess halls, or officers' clubs, which are operated by the United States, and whose "employees are typically paid primarily from income generated by the facility." 15 N.Y. Prac., New York Law of Torts § 17:13. "As a general rule both civilian and military employees of non-appropriated fund instrumentalities are considered employees of the United States government whose negligent

negligence (the "Underlying Litigation"). Melville Hall operates an officers' club for the Merchant Marine Academy. Ms. Evans alleges that on January 18, 2003, she attended an event at Melville Hall, where she fell and seriously injured herself due to an unmarked step near the bathroom. Melville Hall was covered by a Merchants insurance policy (the "Policy") and Merchants assumed the defense of Melville Hall in the Underlying Litigation.[2] Pursuant to Melville Hall's notice of claim, Merchants investigated the claim, and represented Melville Hall and its several employees. (See, e.g., Donnelly Decl. Exs. 2, 4, 5.)

As that suit progressed, the United States moved to substitute itself for Melville Hall and its employees, as required by the FTCA, which bars suits against employees of the federal government for common law torts, and mandates that the exclusive remedy for such suits be an action against the United States. See 28 U.S.C. § 2679(d)(1) (stating any civil action brought against a federal employee "shall be deemed an action against the United States"). Merchants supported this contention and joined the United States in concurrently moving to dismiss Melville Hall and its employees stating "neither the agencies of the government, nor their employees, may be sued in their own name." (See No. 05-133(AET), Merchants' Br. in Supp. of

---

conduct would provide a right of action under the [Federal Torts Claims Act ("FTCA")]." Id. "The instrumentalities are directly related to and are regulated by a branch of the armed services . . . . " Id.

[2]Merchants in its briefs on this matter claim that this it has not assumed coverage, but the numerous letters between Merchants and Melville Hall prove otherwise. (See, e.g., Donnelly Decl. Ex. 5, letter from Merchants' attorney (stating "Merchants has agreed to provide coverage for [Meville Hall], and did, in fact, provide a defense for that entity in the above action").) As this issue is not integral to the present suit, the Court will not further discuss it, other than to point out that Merchants did provide a defense of Melville Hall, and is still involved in the settlement of the Underlying Litigation. (See Merchants' counsel's fax to this Court, June 6, 2007 (discussing a letter that "reiterates Melville Hall NAFI's obligations [to Merchants] in connection with any settlement" in the Underlying Litigation).)

Cross Mot. to Dismiss 4 (citing Ramirez v. United States, 998 F. Supp. 425, 433 (D.N.J. 1998)).) Merchants also argued that the same defendants should be dismissed for lack of jurisdiction. The Court held a conference on July 14, 2005, agreed with the United States and Merchants, and on August 1, 2005, issued a written order dismissing Melville Hall and its employees, substituting the United States for them. The Court did so under the alternative holdings that (1) "the individual Defendants are dismissed for lack of jurisdiction; and [(2)] even if there were jurisdiction, the United States should be substituted for the individual Defendants . . . ." In a letter to the Court on July 25, 2005, Merchants stated that "[i]t is our understanding from the Court's decision, that the Court has dismissed Melville Hall from this action on the basis that Melville Hall is an agency of the United States." (See No. 05-133(AET) Merchants' letter dated July 25, 2005 [26].)

After the substitution of parties, the United States requested that Merchants defend and indemnify it under Melville Hall's Policy. Merchants denied this request asserting that the United States is not referenced anywhere in the Policy's application (the "Application), and because the United States does not "fall within any of the definitions of 'Who is an Insured' as per the Policy." (See Merchants' Statement of Facts 20.) After Merchants' rejection, the instant cross-motions for summary judgment followed. The United States is seeking a declaration that Merchants owes a duty to defend and indemnify it in the Underlying Litigation, and Merchants has cross-moved to dismiss all claims against it, seeking a finding from the Court that Merchants does not owe any insurance coverage with respect to the United States.

III. Discussion

The parties dispute whether federal common law or New York state law governs this

dispute. The United States argues that federal common law applies. As the Supreme Court stated in Boyle v. United Techs. Corp., 487 U.S. 498 (1988), for federal common law to apply there must be "a direct conflict between federal and state law" and the dispute must involve a "uniquely federal interest." Id. at 504. The United States has failed to demonstrate that any conflict between federal and state law exists, and even cites New York law in its papers. (See Pl.'s Br. in Supp. Mot. for Summ. J. 14 (citing Kyong Nam Chang v. Gen. Accident Ins. Co. of Am., 193 A.D.2d 521, 522 (N.Y. App. Div. 1993).) Further, several of the federal cases cited by the United States in its brief also rely on state law. See, e.g., Allied Mut. Ins. Co. v. United States., 955 F. Supp. 1324 (D. Kan. 1997). Therefore, the Court finds that employing federal common law is not warranted in this case, and the Court relies on New York state law of insurance contract interpretation to resolve this dispute.

The interpretation of an "unambiguous contract provision is a matter of law and appropriate for the court's determination on a summary judgment motion." BFP 245 Park Co. LLC v. GMAC Commercial Mortgage Corp., 800 N.Y.S.2d 343 (N.Y. Sup. Ct. 2004). "Courts should construe a contract so as to give meaning to all of its language and avoid an interpretation that effectively renders meaningless a part of the contract." Helmsley-Spear, Inc. v. New York Blood Center, Inc., 257 A.D.2d 64, 69 (N.Y. App. Div. 1999) (citations omitted). "Where a third party seeks the benefit of coverage, the terms of the contract must clearly evince such intent." Sixty Sutton Corp. v. Illinois Union Ins. Co., 34 A.D.3d 386, 388 (N.Y. App. Div. 2006) (citations omitted). However if the policy is ambiguous, such ambiguity is generally construed against the drafter, and in favor of coverage. Primavera v. Rose & Kiernan, 248 A.D.2d 842, 843 (N.Y. App. Div. 1998) (stating "[c]ourts have consistently construed ambiguous policy

4

provisions in favor of coverage and against the insurer who drafted the policy") (citations omitted).

The United States argues that the Policy unambiguously insures it because Melville Hall and the United States are "the same entity." (See Pl.'s Br. in Supp. Mot. Summ. J. 11.) Furthermore, the United States argues that Merchants should have known that Melville Hall was immune from suit in its own name under the FTCA, and therefore by agreeing to insure Melville Hall, Merchants had to know it was, in fact, agreeing to insure the United States. The United States also claims coverage from Merchants for only the specific allegations against Melville Hall and its employees and not for any other agency or officer of the United States. Therefore, the United States argues a determination of liability here would not broaden Merchants' coverage or expose it to greater liability than the Policy anticipates, but simply constitute "the risk insured by [Merchants], nothing more, nothing less." (Pl.'s Br. in Supp. Mot. Summ. J. 12.)

In contrast, Merchants argues that the United States and Melville Hall are not one and the same. As evidence of their difference, Merchants points out that if damages were ascribed to both the United States and Melville Hall, the monies owed would be paid from different sources. See, e.g., 32 C.F.R. § 536.148 (stating for "[c]laims arising out of acts or omissions of employees of NAFI activities . . . payment will be made from NAFIs in accordance with AR 215-1"); and 32 C.F.R. § 536.150 (stating "[w]here liability is determined to exist for both a NAFI and an appropriated fund activity, liability will be apportioned between the two activities"). Looking exclusively to the Policy, "Melville Hall" is listed as the insured, and the United States is not mentioned at all. In the Application, under the listing of "Additional Interests/Certificate Recipients," there is also no mention of the United States. (See Feit Dect. Ex. A, the Policy

5

MER 90.)  Merchants states that Melville Hall unambiguously means Melville Hall and not the United States.  Further, it admonishes that it is not "the function of a court to rewrite insurance policies so as to provide coverage which the court might have considered more equitable."  (See Def.'s Br. Supp. Cross Mot. Summ. J. 14 (citing Cornellier v. Am. Cas. Co., 389 F.2d 641, 644 (2d Cir. 1968) (interpreting Vermont law)).)  Looking within the four corners of the Policy, Merchants claims there can be no construction, consistent with the Policy's plain meaning, that provides coverage for the United States.

      Though both parties argue that the Policy is unambiguous, albeit with alternative interpretations, the Court disagrees and finds ambiguity.  Comparing the Application with the Policy it appears to the Court that there is a gap in the Policy's description of who is an insured, which fails to adequately address the unique nature of Melville Hall's status as a NAFI.  The Application section entitled "Applicant Information" (MER 87), tracks the section of the Policy entitled "Who Is An Insured" (MER 71), and asks the insured to describe itself.  In the Application, an insured may select a series of check boxes that list (1) an individual; (2) corporation; (3) partnership; (4) joint venture; or (5) other.  The Policy lists within the "Who Is An Insured" section additional parties insured based on the type of category applicable.  None of the categories adequately describes a NAFI.  The closest category is described as "an organization other than a partnership, joint venture or limited liability company."  (Id.)  For this category the additional insureds include "'executive officers' and 'directors . . . ' but only with respect to their duties as [] officers or directors . . . [and] stockholders . . . but only with respect to their liability as stockholders."  (MER 71.)  For all categories the Policy portrays a concerted effort by Merchants to cover superior officers, directors, stockholders, and other parties who may

be subject to respondeat superior liability, or liability stemming from supervision of the insured.

Melville Hall properly checked off the box labeled "other" on the Application, as none of the categories adequately describes it. Melville Hall also disclosed on the Application that it is a NAFI (MER 93), and the Application notes that the "risk [of the insured] is located on government property" and states that "assured is responsible for the general interior housekeeping only[,] with all building maintenance and outside ground maintenance handled by the US [sic] Government personnel." (MER 95.)

Although the Policy attempted to create a catch-all category for a business structure other than a partnership, joint venture, or corporation within the section of "Who Is An Insured," the "other organization" category fails to adequately encompass a NAFI. "Civilian and military employees of non-appropriated fund instrumentalities are considered employees of the United States government." 15 N.Y. Prac., New York Law of Torts § 17:13. The United States government has neither directors, executive officers, or stockholders. Furthermore, as other courts have noted, "[o]bviously the government is not a person under our law . . . . [n]or is it believed it could be called an 'organization.'" Farm Bureau Mut. Automobile Ins. Co. v. Manson, 94 N.H. 389, 392 (1947). Therefore the "other organization" category is inadequate and the "Who Is An Insured" category provides no insight regarding additional insureds for NAFIs such as Melville Hall.

The existence of this gap does not necessarily mean that the Policy denies coverage for the managerial role the United States plays both in governance and liability of Melville Hall. Rather, the Court finds that the Policy is inadequate and ambiguous regarding such coverage. As such, the Court looks within the four corners of the Policy to reconcile the ambiguity.

Examining the "Who Is An Insured" section, it is clear that the Policy contains "a studied effort to include as additional insured all those to whom the doctrine of *respondeat superior* could possibly apply." Grant v. United States, 271 F.2d 651, 656 (2d. Cir. 1959) (emphasis in original). In Grant, the court had to determine if an insurance policy that covered a NAFI officer also covered the United States, which was substituted under the FTCA as a defendant for the officer in an underlying litigation. Id. The critical inquiry there, as here, was whether "[u]nder the policy . . . the United States [was] an insured." Id. at 656. The Second Circuit determined that because the policy listed additional insureds as "other superior administrative authority," the policy "disclosed a studied effort to include as additional insureds all those whom the doctrine of *respondeat superior* could possibly apply." Id. The Court found that "[t]his, of course, would include the United States which owned and operated the [NAFI where the officer worked]." Id. This ruling was irrespective of the fact that the United States was not expressly referenced in the policy as an insured.

      The language of Merchants' Policy, though not identical, contains the same intent to cover parties, such as the United States, that have "legal responsibility for [Melville Hall's] business operations." Id. Liability ascribed to the United States under the FTCA derives from respondeat superior. See, e.g., Taber v. Maine, 67 F.3d 1029, 1033 (2d Cir. 1995) ("The courts have uniformly equated the FTCA's 'line of duty' language with the phrase 'scope of employment,' as that concept is defined by the respondeat superior law of the jurisdiction in which the accident occurred."). Because the Policy, for other types of organizations, covers parties with supervisory responsibility, it is consistent to interpret the Policy to provide coverage for the United States, which shares that identical role with respect to Melville Hall.

Merchants was on notice that Meville Hall was a NAFI.  As such, if Merchants wished to deny the United States coverage it was Merchants' responsibility to draft a policy that properly addressed Melville Hall's unique structure and expressly addressed the issue of coverage of the United States.  The Court will not penalize Melville Hall and the United States for the incomplete and artless drafting of the Policy that leaves the question of coverage for the United States a mystery due to categories of "Who Is An Insured," which do not properly include a NAFI's status.  McCarthy v. Am. Int'l Group, 283 F.3d 121, 124 (2d Cir. 2002) ("New York follows the well established contra proferentem principle which requires that equivocal contract provisions are generally to be construed against the drafter.") (citations omitted).

Further militating for coverage is the requirement that courts "construe a contract so as to give meaning to all of its language and avoid an interpretation that effectively renders meaningless a part of the contract." Helmsley-Spear, Inc., 257 A.D.2d at 69 (citations omitted). A finding of no coverage for the United States would render the entire Policy meaningless. Because the FTCA requires the United States to be substituted for Melville Hall for common law torts, interpreting the Policy to mean it does not cover the Untied States would result in Merchants never having to provide any coverage, beyond merely filing a motion to dismiss and substitute the United States for Melville Hall, under the FTCA.  Surely this is not the coverage Melville Hall expected to receive or paid premiums for, and it cannot be the proper construction of the Policy.  Because the interpretation advocated by Merchants eviscerates its responsibility to provide coverage in virtually all circumstances, the Court cannot endorse that interpretation.  Id.

As the Policy evinces a clear intent to cover all parties with supervisory responsibility affiliated with the insured, regardless of the specific organization form, this weighs in reconciling

the Policy's ambiguity in favor of insuring the United States.  Therefore Merchants is required to defend and indemnify the United States in the Underlying Litigation.

The Court's ruling is Merchants' duty inures only to the claims against the United States for which Melville Hall would have been responsible in the absence of the parties' substitution. See, e.g., United States v. Am. Home Assurance Co., No. 94-7621, 2003 WL 21436219, *2 (S.D.N.Y. Jun. 19, 2003) (finding an insurer liable only for the breadth of coverage expressed within a NAFI's policy, and refusing to broaden liability simply because the United States had greater liability and sought coverage under the NAFI's policy).

## IV. CONCLUSION

For the reasons given above, and for good cause shown,

It is on this 22nd day of June 2007,

**ORDERED** that Plaintiff United States' Motion for Partial Summary Judgment is **Granted**; and it is further

**ORDERED** that Defendant Merchants Mutual Insurance Company's Cross Motion for Summary Judgment is **Denied**; and it is further

**ORDERED** that Defendant Merchants Mutual Insurance Company has a duty to defend, and indemnify the United States. in the underlying action of Evans. v. United States, No. 05-5310 (D.N.J.).

                                                                      s/Anne E. Thompson
                                                                  ANNE E. THOMPSON, U.S.D.J.